TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | |
| of | : | No. 25-602 |
| | : | |
| ROB BONTA | : | August 11, 2026 |
| Attorney General | : | |
| | : | |
| NICOLE WELINDT | : | |
| Deputy Attorney General | : | |

The HONORABLE SHANNON DICUS, SHERIFF-CORONER, SAN BERNARDINO COUNTY, has requested an opinion on a question relating to local law enforcement activities at federal immigration facilities.

**QUESTION PRESENTED AND CONCLUSION**

Do the restrictions of the California Values Act codified in Government Code section 7284.6(a) prohibit a local law enforcement agency from pre-staging personnel outside a federal immigration detention facility, entering the facility, or proactively patrolling inside the facility, if the agency acts for public safety purposes in anticipation of, or response to, civil unrest—provided that no immigration enforcement functions are undertaken?

Whether the activities described in the request would violate the California Values Act (Act) would depend on the surrounding facts and circumstances. Among other restrictions, the Act provides that state and local law enforcement agencies shall not use money or personnel "to investigate, interrogate, detain, detect, or arrest persons for immigration enforcement purposes," subject to enumerated statutory exceptions. That restriction contains two prongs: an action requirement and a purpose requirement. Evaluating the activities described in the request, the action requirement may be satisfied because pre-staging personnel at a federal immigration detention facility, entering the

1

25-602

facility, or proactively patrolling inside the facility could certainly involve officers investigating, interrogating, or detecting persons. As to the purpose requirement, the request describes that a local law enforcement agency would act for public safety purposes in anticipation of, or response to, civil unrest, and would not carry out immigration enforcement functions. Determining a law enforcement agency's "purposes" is a factual inquiry that depends on the totality of the circumstances. Law enforcement's subjective intent is relevant but not dispositive, and a court or other entity would not uncritically accept an agency's proffered public safety purpose if the surrounding facts indicated that it was pretextual. Accordingly, identifying whether a particular activity would violate the Act would require a fact-specific analysis.

## BACKGROUND

In 2017, the California Legislature concluded that using the State's limited resources to enforce federal immigration laws did not best promote public safety. The Legislature thus enacted the California Values Act.[1] The Act "seeks to ensure effective policing, to protect the safety, well-being, and constitutional rights of the people of California, and to direct the state's limited resources to matters of greatest concern to state and local governments."[2] The Legislature found and declared that "[a] relationship of trust between California's immigrant community and state and local agencies is central" to public safety, and that "trust is threatened when state and local agencies are entangled with federal immigration enforcement."[3] Moreover, entangling state and local law enforcement agencies with federal immigration enforcement "diverts already limited resources and blurs the lines of accountability between local, state, and federal governments."[4]

In response to these concerns, the California Values Act circumscribes state and local law enforcement agencies' role in immigration enforcement activities.[5] The Act defines "[i]mmigration enforcement" to "include[] any and all efforts to investigate, enforce, or assist in the investigation or enforcement of any federal civil immigration law" or "any federal criminal immigration law that penalizes a person's presence in, entry, or reentry to, or employment in, the United States."[6] And the Act provides that:

---

[1] Gov. Code, § 7284 et seq.

[2] Gov. Code, § 7284.2, subd. (f).

[3] Gov. Code, § 7284.2, subds. (b), (c).

[4] Gov. Code, § 7284.2, subd. (d).

[5] See *City of Huntington Beach v. Becerra* (2020) 44 Cal.App.5th 243, 249.

[6] Gov. Code, § 7284.4, subd. (f).

2

(a) California law enforcement agencies shall not:

(1) Use agency or department moneys or personnel to investigate, interrogate, detain, detect, or arrest persons for immigration enforcement purposes, including any of the following:

(A) Inquiring into any individual's immigration status.

(B) Detaining an individual on the basis of a hold request.

(C) Providing information regarding a person's release date or responding to requests for notification by providing release dates or other information . . . .

(D) Providing personal information, as defined in Section 1798.3 of the Civil Code, about an individual . . . .

(E) Making or intentionally participating in arrests based on civil immigration warrants.

(F) Assisting immigration authorities in the activities described in Section 1357(a)(3) of Title 8 of the United States Code.

(G) Performing the functions of an immigration officer, whether pursuant to . . . law, regulation, or policy, whether formal or informal.

(2) Place peace officers under the supervision of federal agencies or employ peace officers deputized as special federal officers or special federal deputies for purposes of immigration enforcement. . . .

(3) Use immigration authorities as interpreters for law enforcement matters relating to individuals in agency or department custody.

(4) Transfer an individual to immigration authorities unless authorized by a judicial warrant or judicial probable cause determination . . . .

(5) Provide office space exclusively dedicated for immigration authorities for use within a city or county law enforcement facility.

(6) Contract with the federal government for use of California law enforcement agency facilities to house individuals as federal detainees

3

for purposes of civil immigration custody, except pursuant to Chapter 17.8 (commencing with Section 7310).[7]

The Act does not, however, restrict all immigration-related activities. For example, the Act "does not prevent" state and local law enforcement agencies from "[r]esponding to a request from immigration authorities for information about a specific person's criminal history . . . where otherwise permitted by state law."[8] The Act also does not prevent state and local law enforcement agencies from "[c]onducting enforcement or investigative duties associated with a joint law enforcement task force," if certain conditions are met, including that the "primary purpose of the joint law enforcement task force is not immigration enforcement."[9]

The Act also expressly preserves the ability of state and local law enforcement agencies to perform criminal law enforcement functions. Section 7284.6 clarifies that its restrictions do not "prohibit a California law enforcement agency from asserting its own jurisdiction over criminal law enforcement matters."[10]

The San Bernardino County Sheriff-Coroner asks whether local law enforcement agencies would violate the California Values Act if they conducted certain activities.[11] We describe the relevant legal framework, then explain how it would apply to several

---

[7] Gov. Code, § 7284.6, subd. (a). "'California law enforcement agency' means a state or local law enforcement agency, including school police or security departments," but does not include the California Department of Corrections and Rehabilitation. (Gov. Code, § 7284.4, subd. (a).)

[8] Gov. Code, § 7284.6, subd. (b)(2).

[9] Gov. Code, § 7284.6, subd. (b)(3).

[10] Gov. Code, § 7284.6, subd. (f).

[11] Sheriff-Coroner Shannon Dicus, County of San Bernardino, letter requesting opinion to Atty. Gen. Rob Bonta, c/o Former Sr. Asst. Atty. Gen. Marc J. Nolan, Opn. Unit, Dept. of J., June 16, 2025, p. 3 (Request Letter). The requestor reports that an immigration detention center in San Bernardino County "has been the focus of multiple demonstrations—some of which escalated into vandalism, physical threats, or attempted breaches of security infrastructure." (*Id.* at pp. 1-2.) A commenter offers a different assessment, reporting that it has identified "only one incident which involved any alleged harm to property, around June 2020." (Immigrant Legal Resource Center, letter to Opn. Unit, Off. of the Atty. Gen., Oct. 27, 2025, p. 2 (ILRC Comment).) We make no factual findings here. Insofar as we discuss facts, it is to illustrate how the relevant legal analysis would hypothetically apply.

hypothetical activities the requestor contemplates.  As discussed further below, much of the analysis will turn on the specific facts at issue.  We make no factual findings herein.[12]

## ANALYSIS

The Sheriff-Coroner requests an opinion on the lawfulness of "pre-staging personnel" and "entering a contracted federal immigration detention facility or proactive interior perimeter patrol" in "anticipation of, or response to, civil unrest," where no immigration enforcement functions would be undertaken, but where local law enforcement agencies are needed "to preserve public safety, ensure access for emergency responders, and protect protestors, detainees, employees, and nearby residents."[13] Consistent with guidance for police preparation for mass demonstrations, we understand the term "pre-staging personnel" to mean positioning personnel or resources in a staging area and holding them there until needed.[14]  Additionally, we understand the term "proactive interior perimeter patrol" to mean conducting a patrol inside the secure perimeter of a detention center or other secure facility.

Our Department has previously explained that the California Values Act does not prevent a California law enforcement agency "from asserting its own jurisdiction over criminal law enforcement matters."[15]  That is, the Act does not prevent a state or local law enforcement agency from "engaging in an investigation, detention or arrest for criminal activities based upon California state law."[16]  That remains true even if the law enforcement agency's activities "indirectly impact or assist a federal agency that is engaged in immigration enforcement."[17]  But the Department has also cautioned that this "narrow" public safety provision "should not be used to avoid the prohibitions in the

---

[12] See 108 Ops.Cal.Atty.Gen. 69, 93-94 (2025) (explaining that Attorney General opinions under Government Code section 12519 evaluate questions of law and do not resolve questions of fact).

[13] Request Letter, *supra*, at pp. 2-3.

[14] See U.S. Dept. of J., Bur. of J. Assistance, Mutual Aid:  Multijurisdictional Partnerships for Meeting Regional Threats (Sept. 2005) pp. 26-27, https://www.ncjrs.gov/pdffiles1/bja/210679.pdf.  A staging area is a location where personnel check in, receive briefings, and have their equipment needs addressed before being deployed to a specific assignment.  (*Id.* at pp. 25-27, 33.)

[15] Cal. Dept. of Justice, Div. of Law Enforcement, Information Bull. No. 2025-DLE-03 (Jan. 17, 2025) p. 7.

[16] *Ibid.*

[17] *Ibid.*

25-602

Values Act on using state resources to conduct immigration enforcement."[18]  As discussed below, we reach the same conclusions here.

**The California Values Act Restricts Specified Law Enforcement Actions Undertaken for Immigration Enforcement Purposes**

We begin by construing the Act's most relevant provision, Government Code section 7284.6(a)(1).  Section 7284.6(a)(1) restricts state and local law enforcement agencies from using money or personnel "to investigate, interrogate, detain, detect, or arrest persons for immigration enforcement purposes, including any of the following," and then lists specific activities that come within that limitation.  The provision's general restriction thus contains two prongs:  an action requirement and a purpose requirement.

As to the action requirement, the provision uses active verbs—investigate, interrogate, detain, detect, and arrest—that it does not itself define, meaning that we look to the ordinary understanding of those words, typically a dictionary definition.[19]  To "investigate" means "to observe or study by close examination and systematic inquiry."[20] To "interrogate" means "to question formally and systematically."[21]  To "detain" means "to hold or keep in or as if in custody."[22]  To "detect" means "to discover or determine the existence, presence, or fact of."[23]  And to "arrest" means "to take or keep in custody by authority of law."[24]

---

[18] *Ibid.*

[19] *People v. Walker* (2024) 16 Cal.5th 1024, 1035.

[20] Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/investigate (as of Aug. 11, 2026).  Similarly, Black's Law Dictionary defines "investigate" as "[t]o inquire into (a matter) systematically; to make (a suspect) the subject of a criminal inquiry."  (Black's Law Dict. (12th ed. 2024), investigate.)

[21] Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/interrogate (as of Aug. 11, 2026).

[22] Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/detain (as of Aug. 11, 2026).

[23] Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/detect (as of Aug. 11, 2026).  Other statutes use "detect" in this manner as well.  (E.g., Food & Agr. Code, § 5262, subd. (a)(1) ["to detect, exclude, eradicate, control, or manage the invasive pest"]; Gov. Code, § 12422.5, subd. (a) ["develop[ing] internal control guidelines applicable to each local agency to prevent and detect financial errors and fraud"].)

[24] Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/arrest (as
(continued…)

6

As to the purpose requirement—specifically, the requirement that state or local law enforcement agencies act "for immigration enforcement purposes"—the Act broadly defines "[i]mmigration enforcement" to include "any and all efforts to investigate, enforce, or assist in the investigation or enforcement of" federal immigration laws.[25] Although a law enforcement agency's "purposes" are central to an activity's lawfulness under section 7284.6(a)(1), the Act itself does not instruct how to determine those purposes. In other contexts, the California Supreme Court has explained that because dictionaries define "'purpose'" as "'something set up as an object or end to be obtained,'" a court evaluating an activity's purpose should look to evidence of the relevant party's intent.[26] That evaluation "is a question of fact, to be determined through a consideration of the 'totality of the facts and circumstances.'"[27] While "'subjective intent will not be controlling,'" the Court has explained, "'it is relevant to show purpose.'"[28] As an example, where the California Supreme Court was evaluating whether a child had a "recreational purpose" in entering a private landowner's property, the Court considered that the child was "playing with a hand-held toy" and had expressed being "'tired from playing,'" "children had previously played on the [farm] equipment" on the property, and the child's "mother had warned him several times not to play on" the property.[29] Similarly, in considering whether a defendant prepared child pornography for "commercial purposes," the Court looked to "the planning and effort required to create the images that appear on the videotape," the defendant's "possession of other equipment" that would further a commercial goal, and the defendant's "subsequent posting of still photographs from the videotape."[30]

In the context of the California Values Act, many facts may be relevant in identifying whether a state or local law enforcement agency acted "for immigration enforcement purposes." The conditions at the site of the law enforcement agency's activities, the timeline and location of the agency's activities, and the agency's representations about its activities will inform the factual inquiry. Relevant facts may

of Aug. 11, 2026). Similarly, Black's Law Dictionary defines "arrest" to be "[a] seizure or forcible restraint, esp. by legal authority," and "[t]he taking or keeping of a person in custody by legal authority." (Black's Law Dict. (12th ed. 2024), arrest.)

[25] Gov. Code, § 7284.4, subd. (f).

[26] *People v. Cochran* (2002) 28 Cal.4th 396, 404-405.

[27] *Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1102.

[28] *Ibid.*; cf. *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 208, 218 (in considering a defendant corporation's "subjective intent," the court observed that "parties rarely admit an improper motive," meaning courts may look to "circumstantial evidence and inferences").

[29] *Ornelas v. Randolph*, *supra*, 4 Cal.4th at p. 1102.

[30] *People v. Cochran*, *supra*, 28 Cal.4th at p. 405.

include, for example, the type of facility at which officers were located; whether there was active violence; whether conditions raised credible public safety concerns; how specific and articulable any threat of violence was; whether the agency's response was proportional to the violence; whether public safety concerns centered on events taking place inside or outside of the facility's secure perimeter; whether the secure perimeter was breached or in imminent danger of being breached; and what representations the agency had made about its activities. If a law enforcement agency responded differently to protests at immigration detention facilities than to analogous protests in other contexts, that could also suggest that the agency was acting for immigration enforcement purposes when responding at the immigration facilities.

Where a state or local law enforcement agency's activity meets both the action and purpose requirements, the activity is restricted under the statute's general rule. Illustrating where both the action and purpose requirements are satisfied, section 7284.6(a)(1) also lists specifically restricted activities. The statute uses the word "including"—a term of enlargement—which indicates that the list is not exhaustive.[31] In interpreting the breadth of the general provision, we look to the specifically restricted activities.[32] For example, section 7284.6(a)(1)(G) provides that investigating, interrogating, detaining, detecting, or arresting persons for immigration enforcement purposes specifically includes "[p]erforming the functions of an immigration officer, whether pursuant to Section 1357(g) of Title 8 of the United States Code or any other law, regulation, or policy, whether formal or informal." The Legislature wrote that provision expansively, to encompass functions that immigration officers perform in wide-ranging contexts, both formal and informal. The broad reach of that specific restriction supports interpreting the general restriction of section 7284.6(a)(1) broadly as well. Moreover, interpreting the general restriction broadly effectuates the Legislature's core concerns in enacting the Act: to avoid "[e]ntangling" state and local agencies in federal immigration enforcement, diverting resources, and "blur[ring] the lines of accountability between local, state, and federal governments."[33] As the requestor observes, those policy concerns carry particular weight here, as the presence of state and local officers at federal immigration detention facilities may create confusion about which agencies are involved in immigration enforcement.[34]

---

[31] See *Brown v. City of Inglewood* (2025) 18 Cal.5th 33, 43.

[32] See *ibid.* (under the interpretive canon *ejusdem generis*, when a statute provides both a general category and specific examples, the general category is "'restricted to those things that are similar to those which are enumerated specifically'").

[33] Gov. Code, § 7284.2, subd. (d).

[34] See Request Letter, *supra*, at p. 3 ("The visual presence of deputies in or near an immigration facility, particularly during protests, may be perceived as aiding federal deportation infrastructure, even where no actual immigration enforcement occurs").

8

By contrast, where the facts and circumstances demonstrate that an agency did not act for immigration enforcement purposes, then section 7284.6(a)(1)'s general prohibition does not restrict those activities.[35]  The Act expressly preserves a state or local law enforcement agency's ability to "assert[] its own jurisdiction over criminal law enforcement matters."[36]  And interpreting section 7284.6(a)(1) not to prevent a state or local law enforcement agency from responding to violations of California criminal law, even if the activities incidentally benefit federal immigration enforcement efforts, is consistent with the design of the statute.  The Legislature wrote section 7284.6(a)(1) broadly but focused on "immigration enforcement purposes."  The provision does not implicate a state or local law enforcement agency's activities that are not taken for "immigration enforcement purposes," even where the activities have the incidental *effect* of assisting federal agencies.

Additionally, the canon against avoiding interpretations that render language surplusage counsels against reading the statute to constrain law enforcement activities merely because the activities would incidentally benefit immigration officers.[37] Interpreting the statute in that manner would render surplusage one of the specific restrictions in section 7284.6(a)(1).  Section 7284.6(a)(1)(F) specifically restricts "[a]ssisting immigration authorities *in the activities described in Section 1357(a)(3) of Title 8 of the United States Code*."[38]  But construing the general rule of section 7284.6(a)(1) to disallow any activities where they incidentally benefit immigration officers would read the statute as if the Legislature had restricted "assisting immigration authorities" in *any* circumstance, rendering the more particular restriction on assisting

---

[35] The Act enumerates additional restricted activities, such as "[p]lac[ing] peace officers under the supervision of federal agencies," and using "immigration authorities as interpreters" in certain circumstances.  (Gov. Code, § 7284.6, subd. (a)(2)-(6).)  We do not understand the request to suggest facts implicating those provisions.  However, if circumstances arose where state or local officers were placed under the supervision of federal agencies—for example, where law enforcement officers patrolling within the interior perimeter of a federal immigration facility were working under the direction of a federal agency—that could separately violate the Act.

[36] Gov. Code, § 7284.6, subd. (f).

[37] See *Brennon B. v. Superior Court* (2022) 13 Cal.5th 662, 691.

[38] Gov. Code, § 7284.6, subd. (a)(1)(F), italics added.  Section 1357(a)(3) permits immigration officers, without a warrant, "within a reasonable distance from any external boundary of the United States, to board and search for aliens any vessel within the territorial waters of the United States and any railway car, aircraft, conveyance, or vehicle, and within a distance of twenty-five miles from any such external boundary to have access to private lands, but not dwellings, for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States."  (8 U.S.C. § 1357(a)(3).)

9

immigration authorities concerning "the activities described in Section 1357(a)(3)" superfluous.

Furthermore, interpreting the provision to allow activities taken not for immigration enforcement purposes but for criminal law enforcement purposes promotes the Legislature's intent: the Act is tailored to prevent state and local law enforcement officers from becoming "'force multipliers' of immigration agents" while allowing the officers to continue "community policing."[39] We caution, however, that a court or other entity would not uncritically accept an agency's proffered public safety purpose if facts supported that it was pretextual, as discussed further below in evaluating the specific scenarios described in the request.

**Whether the Activities Described in the Request Violate the Act Would Depend on the Surrounding Facts and Circumstances**

Turning to the scenarios here, the requestor inquires about local law enforcement agencies pre-staging personnel at a federal immigration detention facility, officers entering the facility, and officers proactively patrolling inside the facility, activities which the agencies would undertake "for public safety purposes in anticipation of, or response to, civil unrest," with "no immigration enforcement functions." Whether these activities would fall within both the action and purpose requirements of section 7284.6(a)(1) would depend on the totality of the circumstances.

As to the action requirement, if an agency's officers were pre-staged near the facility but were not engaged with protestors, such that the officers were not detaining, detecting, or arresting persons, then the statute's restrictions may not apply. But officers in these scenarios may be engaged in a restricted action. For example, officers who are pre-staged outside an immigration facility and monitoring protestors could be "investigating" or "detecting" persons. Officers that are pre-staged may also subsequently engage in additional activities—as that is the rationale for pre-staging—during which officers could be investigating, interrogating, detaining, detecting, or arresting persons. And officers that enter and proactively patrol inside a federal immigration facility, for example to prevent protestors from breaching federal property lines, would be "detecting" or "investigating" persons. The proposed activities could thus come within section 7284.6(a)(1)'s action requirement.

As to the purpose requirement, determining whether a state or local law enforcement agency acted for "immigration enforcement purposes" requires evaluating the totality of facts and circumstances, as explained above. Here, the requestor states that the local law enforcement agency would be acting "for public safety purposes in anticipation of, or response to, civil unrest," including "preventing or responding to

---

[39] Assem. Com. on Public Safety, Analysis of Sen. Bill No. 54 (2017-2018 Reg. Sess.) as amended Mar. 29, 2017, p. 7.

25-602

violence, vandalism, or obstruction of emergency services."[40]  If the totality of the circumstances demonstrated that the agency in fact did not act for immigration enforcement purposes, then section 7284.6(a)(1) would not restrict the agency's activities.  But if the surrounding circumstances demonstrated that the agency acted for immigration enforcement purposes, then the Act's restrictions would apply.[41]

With regard to pre-staging, for example, if an agency stationed officers outside the secure perimeter of a federal immigration facility in response to a large crowd and a specific, articulable threat of violence, those facts would suggest that the agency acted for public safety purposes and not immigration enforcement purposes.  Deploying officers outside the perimeter in such a scenario allows officers to effectively carry out tasks such as communicating with protestors, managing large groups, and facilitating the passage of emergency vehicles on nearby roads.  But if local law enforcement officers were pre-staged outside a facility where there was no large crowd or articulable threat of violence, and officers were engaged in practices such as prominently displaying riot gear, armored vehicles, and crowd control weaponry to law-abiding protestors despite not doing so in analogous situations, then the circumstances could suggest that the agency's purpose was not in fact public safety but rather to assist federal authorities in enforcing immigration law.

With regard to entering or conducting a proactive interior perimeter patrol in an immigration detention facility, if, for instance, the record supports that state or local law enforcement officers entered an immigration facility in response to people scaling the fence into the facility while carrying weapons, those facts would support that the agency was acting lawfully.  While the officers' entry might incidentally *benefit* immigration enforcement, it was not done for immigration enforcement *purposes*.  By contrast, if state or local law enforcement officers entered a facility where there was no articulable threat of violence, those facts would support a finding that the agency's purposes were to engage in immigration enforcement activities performed inside the facility's perimeter, such as preventing detainees from escaping.  And if local law enforcement officers patrolled within an immigration detention facility to support the facility's security needs and for the purpose of enabling a greater number of federal officials to engage in immigration enforcement activities in the field, then the local law enforcement agency

---

[40] Request Letter, *supra*, at p. 3.  The requestor further explains that no "immigration enforcement functions" would be undertaken.  (*Ibid.*)  As explained above, the statutory inquiry is whether the actions were undertaken for immigration enforcement *purposes*.  Whether the officers are engaged in immigration enforcement *functions* would of course be one relevant factor in the totality analysis as to purposes.

[41] See *ante*, fns. 25-31 & accompanying text (describing legal framework to evaluate a law enforcement agency's purposes under section 7284.6(a)(1)).

would be acting with "immigration enforcement purposes" in violation of the statute as well.

We note that a commenter would interpret the Act to always prohibit a state or local law enforcement agency from pre-staging officers at an immigration detention facility, and from entering and conducting proactive interior perimeter patrol within that facility.[42]  The commenter reasons that because these activities benefit federal immigration officials "by shielding them from public censure and ensuring the continuation of smooth and uninterrupted immigration detention operations," the activities are unlawful under the Act.[43]  The question is one of purposes, however, and undertaking that inquiry would involve the totality of circumstances analysis described above.  In our view, a law enforcement agency's activities are not inherently undertaken for "immigration enforcement purposes" merely because the activities incidentally benefit immigration enforcement.  If the Legislature had meant to sweep in all such activities, it could have categorically restricted activities with "immigration enforcement effects," rather than "immigration enforcement purposes."  The Legislature did not do so.  And, consistent with the statutory text, the legislative history repeatedly emphasizes that the Legislature intended the Act to "limit[] the use of [the State's] resources for *purposes of immigration enforcement*."[44]  As a Court of Appeal has explained, the Act "does not

---

[42] The commenter, the Immigrant Legal Resource Center (ILRC), is an organization that works on issues relating to criminal immigration law.  (ILRC Comment, *supra*, at p. 1.)  The ILRC explains that it played a role in drafting and passing the California Values Act.  (*Ibid.*)

[43] *Id.* at p. 6.

[44] Assem. Com. on Judiciary, Analysis of Sen. Bill No. 54 (2017-2018 Reg. Sess.) as amended June 19, 2017, p. 3, italics added; see Assem. Com. on Public Safety, *supra*, at p. 9 ("This bill seeks to place limits on the use of law enforcement resources to investigate or detain persons for federal immigration enforcement purposes"); Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 54 (2017-2018 Reg. Sess.) as amended Mar. 29, 2017, p. 8 (the bill was spurred by a need "to evaluate the appropriate use of state and local resources for immigration enforcement purposes"); Sen. Com. on Appropriations, Analysis of Sen. Bill No. 54 (2017-2018 Reg. Sess.) as amended Mar. 6, 2017, p. 1 ("SB 54 would place certain restrictions on state and local government entities in their interactions with federal immigration authorities"); Sen. Com. on Public Safety, Analysis of Sen. Bill No. 54 (2017-2018 Reg. Sess.) as amended Jan. 24, 2017, p. 2 ("The purpose of this bill is to limit state and local law enforcement agencies['] involvement in immigration enforcement and to ensure that eligible individuals are able to seek services from and engage with state agencies without regard to their immigration status," bold and italics omitted).

prohibit *all* local law enforcement activity related to immigration or a person's immigration status," but rather "limits or prohibits *certain* law enforcement activities."[45]

The same commenter also points to the Act's exception for joint law enforcement task forces. Recall that section 7284.6(a) restricts state and local law enforcement agencies from performing various activities, including using "agency or department moneys or personnel to investigate, interrogate, detain, detect, or arrest persons for immigration enforcement purposes."[46] Section 7284.6(b)(3) then provides that, "[n]otwithstanding the limitations in subdivision (a), this section does not prevent any California law enforcement agency from . . . [c]onducting enforcement or investigative duties associated with a joint law enforcement task force" if certain conditions are met, including that "[t]he primary purpose of the joint law enforcement task force is not immigration enforcement."[47] The commenter contends that the Act prohibits the activities proposed here because the activities would qualify as conducting enforcement or investigative duties with a joint law enforcement task force under section 7284.6(b).[48] As evidence of a task force, the commenter cites a memorandum issued by the U.S. Attorney General, which states that "[a]ll state and local law enforcement officers protecting ICE facilities and personnel are hereby added to a temporary ICE Protection Task Force alongside each of the Department's law enforcement components."[49] The commenter concludes that because "[p]re-staging personnel, proactive interior perimeter patrol, and entering an immigration detention facility, are all acts which by their nature work to protect immigration detention," local law enforcement agencies engaging in those activities would be participating in a joint task force with the primary purpose of immigration enforcement.[50]

We conclude that the U.S. Attorney General's unilateral designation of a task force in September 2025, without more, does not mean that a state or local law enforcement agency has violated the California Values Act. Before considering whether the agency's activities fall within the joint task force exemption in section 7284.6(b), we first evaluate whether the U.S. Attorney General's designation alone brings the activities

---

[45] *City of Huntington Beach v. Becerra*, *supra*, 44 Cal.App.5th at pp. 277-279, italics added.

[46] Gov. Code, § 7284.6, subd. (a).

[47] Gov. Code, § 7284.6, subd. (b)(3).

[48] ILRC Comment, *supra*, at p. 5.

[49] U.S. Atty. Gen., mem. to Director of the Federal Bur. of Investigation, Director of the Bur. of Alcohol, Tobacco, Firearms, and Explosives, Director of the U.S. Marshal's Service, Administrator of the Drug Enforcement Admin., and Director of the Executive Off. of U.S. Attys., Sept. 29, 2025, p. 2.

[50] ILRC Comment, *supra*, at p. 5.

13

within section 7284.6(a)'s restrictions.[51]  In our view, it does not.  The "task force" designation does not necessarily mean, for example, that a law enforcement agency is in fact "investigat[ing], interrogat[ing], detain[ing], detect[ing], or arrest[ing] persons for immigration enforcement purposes."[52]  Federal law enforcement's unilateral designation does not mean that a state or local law enforcement agency has necessarily acted in ways that satisfy that provision's action requirement or purpose requirement, as laid out above.[53]  To be sure, the analysis would change if, for instance, a law enforcement agency was strategizing with federal immigration authorities for immigration enforcement purposes.  The requestor did not provide facts as to the San Bernardino County Sheriff's Department's involvement in the U.S. Attorney General's designated task force, and we make no factual findings about the agency's activities here.[54]

## CONCLUSION

Section 7284.6(a)(1) restricts state and local law enforcement agencies from engaging in specified actions for "immigration enforcement purposes."  The requestor asks about scenarios in which a local law enforcement agency acts for criminal law enforcement and public safety purposes, and undertakes no immigration enforcement functions.  The application of the Act in these situations would depend on the surrounding facts and circumstances.  Section 7284.6(a)(1) would not restrict a law enforcement agency's actions if the totality of the circumstances demonstrated that the agency did not act for immigration enforcement purposes.  By contrast, the provision would restrict an agency from engaging in the statute's enumerated actions if the totality of the circumstances demonstrated that the agency did act for immigration enforcement

---

[51] See *City of Huntington Beach v. Becerra*, *supra*, 44 Cal.App.5th at pp. 277-278; Gov. Code, § 7284.6, subd. (b) ("Notwithstanding the limitations in subdivision (a) . . .").

[52] Gov. Code, § 7284.6, subd. (a)(1).

[53] The task force designation may, however, be a relevant piece of evidence as to a state or local law enforcement agency's purposes.

[54] Counsel for the requestor observes that the Act does not allow a state or local law enforcement agency to conduct certain other activities—not contemplated by the requestor—such as "helping federal officials re-arrest or detain immigration detainees." (Deputy County Counsel Miles Kowalski, San Bernardino County Off. of County Counsel, mem. to Sheriff Shannon Dicus, San Bernardino County Sheriff's Dept., June 16, 2025, p. 3.)  We agree that these activities could fall within various statutory restrictions, depending on the authority under which individuals were held at the immigration facility.  (See, e.g., Gov. Code, § 7284.6, subd. (a)(4) [restriction on "[t]ransfer[ring] an individual to immigration authorities unless authorized by a judicial warrant or judicial probable cause determination, or in accordance with Section 7282.5"]; Gov. Code, § 7284.6, subd. (a)(1)(E) [restriction on "[m]aking or intentionally participating in arrests based on civil immigration warrants"].)

25-602

purposes.  The question of an agency's purposes is one of fact, and we make no factual findings herein.  As our Department has cautioned before, California law enforcement agencies may not merely assert public safety interests "to avoid prohibitions in the Values Act on using state [or local] resources to conduct immigration enforcement."[55]

---

[55] Information Bull. No. 2025-DLE-03, *supra*, at p. 7.

25-602